## J. ALLEN BARRY v. W. B. JORDAN and Another.[1]

November 10, 1911.

Nos. 17,240—(86).

**Action upon agreement to pay debt of another.**
> Where a debtor assigns his property to a purchaser, who in consideration thereof agrees to pay the creditors of the assignor, such creditors may sue the purchaser directly upon his agreement.

**Evidence.**
> The evidence sustains the facts found as to the amount due plaintiff from defendants' grantor.

Action in the district court for Ramsey county to recover $7,-664.24, amount alleged to be due to plaintiff, as sales manager, for his share of profits from the sale of incandescent lamps under a contract between him and the National Sales Company.

The complaint set out the substance of the contract with plaintiff, and alleged that the sales company transferred to defendants all its contracts, and in consideration therefor defendants assumed and agreed to pay all contracts, including the indebtedness of the company to plaintiff, and to indemnify and hold the company harmless from any liability.

The answer set out the terms of the written contract referred to in the complaint, and alleged that the National Sales Company was a subsidiary company of, and was managed by, another corporation in which defendants were large stockholders, and when the latter com-

[1] Reported in 133 N. W. 78.

pany was sold to one Thompson, who had been its manager, it was stated to defendants it was necessary that such company should transfer its property to defendants in order that they should at once transfer the same to said Thompson, and as a part of the transaction the property of the National Sales Company was transferred with it; that plaintiff was a party to and knew of all these transactions, and knew defendants were not owners of such company and were not liable on their contracts, and the transfer was merely a matter of form.

The reply alleged that in consideration of plaintiff's spending a large part of his time away from home attending to its business, the National Sales Company agreed to pay him in addition to his commissions all his necessary hotel, traveling and incidental expenses while so away from home, and that under such agreement he was paid for such expenses the sum of $2,263.50.

The case was tried before Brill, J., who made findings and ordered judgment in favor of plaintiff for $1,434.69. From an order denying defendants' motion to amend the findings, to set aside the conclusions of law, and for judgment notwithstanding the verdict or for a new trial, they appealed. Affirmed.

*C. D. & R. D. O'Brien,* for appellants.
*O. H. O'Neill,* for respondent.

LEWIS, J.

This action was commenced for the recovery from defendants of the amount claimed by plaintiff to be due him from the National Sales Company, which amount plaintiff claims was assumed by defendants in their contract of purchase from that company. The trial court found with the plaintiff, and ordered judgment in his favor for $1,-434.69, with interest from August 1, 1910.

The National Sales Company was a corporation engaged in buying, selling, and dealing in electrical machinery and appliances. Its only business consisted of selling incandescent lamps on commission for certain manufacturers, and the only property it ever owned was its contracts with such companies and the commission due it for sales thereunder. Prior to August 1, 1910, a contract existed between plaintiff and the company, by the terms of which the plaintiff agreed to act

in the capacity of sales manager for the company and devote his exclusive time to the business. The company agreed to pay him for his services one-third of the profits derived from all business which should be secured through his efforts and influence, and to settle with the plaintiff once each year, beginning one year from the first day of February, 1909. The company received from sales conducted by plaintiff to August 1, 1910, $20,519.14, and his expenses, amounting to $1,726.85, and $4,829.40 as compensation were paid. Prior to August 2, 1910, no stock had been issued and no money had been paid in by any subscribers for stock; but on or about that date, and prior to the sale contract next referred to, five shares of stock were issued to defendants. Such was the status of the parties August 2, 1910, when an agreement was entered into between the company and defendants, dated August 6, 1910, whereby the company sold and transferred to the defendants all of its personal property, assets, and contracts, and in consideration therefor the defendants "do hereby severally and jointly assume and agree to satisfy and to pay any and all obligations, liabilities, and indebtedness, expressed or implied, of every name, nature, and description whatsoever, including promissory notes of said Northwestern Electric Equipment Company, of said Electric Construction Company and of said National Sales Company, and to carry out and perform all of the terms and conditions of any and all contracts, of every name, nature, and description between any or either of said companies and third persons except such contracts as are herein assigned to the party of the second part, and to save and hold harmless and indemnify said party of the second part and his assigns from and for any loss, cost, or damage whatsoever, arising from, or growing out of, or in any manner due to such obligations, indebtedness, or contracts."

On the same date, August 6, 1910, the defendants sold and transferred to one F. B. Thompson the manufacturers' contracts which had been assigned to them by the company, and all the commissions thereunder earned after August 2, 1910; but defendants retained $20,000 in cash which they received from the sales company. After transferring its property to defendants, the sales company ceased to do business. Thompson then transferred the manufacturers' contracts to the

Northwestern Equipment Company, which company continued to operate under them.

1. The first proposition contended for by defendants is that plaintiff was not a party to or privy to the contract between the sales company and defendants, and they cannot be compelled to account to him in a direct action, conceding the company was indebted to him as claimed. This question has been definitely settled by the decisions of this court contrary to the views of defendants. Where a debtor assigns his property to a purchaser, who in consideration thereof agrees to pay the claims of the creditors of the assignor, such creditors may sue the purchaser directly upon his agreement. Lovejoy v. Howe, 55 Minn. 353, 57 N. W. 57; Maxfield v. Schwartz, 43 Minn. 221, 45 N. W. 429; Follansbee v. Johnson, 28 Minn. 311, 9 N. W. 882.

2. We are of the opinion that the trial court properly construed the contract between plaintiff and the sales company to provide that the amount of the expenses incurred by plaintiff in conducting the business was to be paid out of the gross amount received, and that the profits were to be ascertained by deducting the amount of the expenses from the gross amount received.

We find evidence sufficient to justify the court in finding that plaintiff's agreement to subscribe and pay for one hundred shares of the stock of the company was abandoned by all the parties, including the company and defendants. Defendants transferred the contracts to Thompson with that understanding, and are in no position now to insist on that feature of plaintiff's agreement.

Affirmed.