**CROSSTOWN BELL, INC., Appellant,**

**v.**

**NORTHWESTERN BELL TELEPHONE
COMPANY, Respondent.**

**No. C3–85–1565.**

Court of Appeals of Minnesota.

Feb. 25, 1986.

Stephen C. Davis, Michael J. Minenko,
Minneapolis, for appellant.

Michael D. Madigan, David S. Johnson,
Minneapolis, for respondent.

Heard, considered and decided en banc
by POPOVICH, C.J., and PARKER, WOZ-
NIAK, LANSING, FORSBERG, RAN-
DALL and CRIPPEN, JJ.

### OPINION

CRIPPEN, Judge.

In 1972, respondent Northwestern Bell
agreed to rent property from appellant
Crosstown Bell. The lease agreement in-
cluded an option to purchase. The agree-
ment stated the option must be exercised at
least 90 days prior to the end of the 10th
year of the lease. Thus, respondent was
required to exercise the option on or before
June 2, 1982. Some time after the agree-
ment was signed, the parties executed a
side letter to the lease. The side letter
provided that the option to purchase would
be exercised only at the end of the 10th
year. Appellant then assigned the right to
receive rent payments to a mortgagee.
For the next several years, respondent
dealt only with the mortgagee. In 1982,
shortly before the June 2 deadline, respon-
dent notified the mortgagee of its exercise
of the option to purchase. Appellant re-
ceived this notice after June 2. Appellant
sought a declaratory judgment, claiming
that respondent had not exercised its op-
tion to purchase in a timely manner. The
trial court found that because of the modi-
fication to the lease, Northwestern Bell
exercised the option in time. Crosstown
Bell appeals. We affirm.

## FACTS

Alfred Teien is the owner of appellant Crosstown Bell, a closely held corporation. In 1971, he purchased property in Richfield, and in 1972 he negotiated a lease of the property to respondent Northwestern Bell. Respondent agreed to pay an annual rent of $82,000, and appellant agreed to improve the property to conform to respondent's needs. Most importantly, they agreed that the respondent would have the option to purchase the property for $650,000, provided the lessor receives "written notice thereof Ninety (90) days prior to the end of the Tenth (10) year of this Lease."

Appellant received financing for improvements from the Union Central Life Insurance Company. Before agreeing to lend the money, Union Central insisted that the parties include a side letter with the lease agreement. The parties agreed. The side letter provides as follows:

It is the intent of Paragraph 20 of the lease that the option to purchase be exercisable by Lessee only at the end of the tenth year of the lease. Lessee shall give written notice also to a first mortgagee of the leased premises of its exercise of the option, and shall close the sale and pay the purchase price so as to protect the mortgage interest of the mortgagee (but limited in amount to the option price).

Union Central also insisted that appellant assign to it the right to receive respondent's rent payments, and Union Central informed respondent that the payments should be made to the Don J. McMurray Company, Union Central's servicing agent.

In 1982, Don J. McMurray Company merged with the Rothschild Financial Corporation, and respondent was instructed to send rent payments and other correspondence to Rothschild.

On May 25, 1982, respondent wrote to Rothschild and stated the exercise of the option to purchase. Rothschild received the notice on June 1, which was the 91st day prior to the end of the 10th year of the lease. On approximately June 22, Rothschild received a letter from respondent's attorney that referred to the first letter and again indicated respondent's exercise of the option to purchase. Rothschild forwarded this letter immediately to appellant.

Appellant took the position that respondent had not made a timely exercise of its option. Appellant refused a full-payment check which was tendered by respondent.

In January 1983, appellant sought declaratory relief, claiming respondent had made an untimely exercise of the option to purchase. Respondent counterclaimed for specific performance. The trial court found that the parties intended by the 1972 side letter to modify the original lease. The court found that since the parties agreed that the option to purchase was exercisable only at the end of the 10th year of the lease, an exercise of the option within the last quarter of the 10th year constituted a timely exercise. The court denied appellant's claim and granted respondent's counterclaim for specific relief. Crosstown Bell appealed.

## ISSUES

Did respondent make a timely exercise of the option to purchase at the end of the 10th year of the lease?

## ANALYSIS

Appellant argues that the side letter does not modify the lease agreement, but instead merely explains the lease agreement, leaving in effect a requirement for notice 90 or more days before the end of the tenth lease year. The side letter was drafted at the insistence of the mortgagee, probably because the lease agreement as it stood would have allowed respondent to exercise the option to purchase in years prior to the end of the 10th year of the lease. The mortgagee apparently thought that exercise of the option at the end of an earlier year of the lease term would be inimical to its interests.

The trial court concluded that the agreement of the parties was manifested both by the lease agreement and the side letter, which the court said was a modification of the original agreement. Thus, the court found that notice of exercise could not oc-

cur more than 90 days before the tenth year, but would have to be given during the last quarter of the tenth year. We agree.

The standard for construction of contracts is

the reasonable meaning of the language used, considered in the light of the surrounding circumstances, and what the parties must reasonably have contemplated.

*Hartung v. Billmeier*, 243 Minn. 148, 151, 66 N.W.2d 784, 788 (1954). The trial court correctly viewed the side letter as a change in the contractual relationship of the parties, and it identified the reasonable meaning of language as amended on the time for exercising a purchase option.

### DECISION

The side letter executed by the parties altered the original contract. Respondent made a timely exercise of its option to purchase the property.

Affirmed.