BARCLAY SQUARE PROPERTIES, a New Jersey limited partnership, and Brookhill Capital Resources, Inc., a New Jersey corporation, Appellees,

v.

MIDWEST FEDERAL SAVINGS AND LOAN ASSOCIATION OF MINNEAPOLIS, Appellant.

No. 89–5090.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 25, 1990.

Decided June 6, 1991.

Rehearing Denied July 31, 1991.

William S. Borchers, Minneapolis, Minn., for appellant.

Timothy D. Kelly and Robert M. Goldstein, Minneapolis, Minn., for appellees.

Before FAGG, Circuit Judge, HENLEY, Senior Circuit Judge, and BEAM, Circuit Judge.

BEAM, Circuit Judge.

In a prior decision, we remanded this matter to the district court to determine whether federal jurisdiction existed.[1] *See Barclay Square Properties v. Midwest Federal Savings & Loan Ass'n*, 893 F.2d 968 (1990). Our jurisdictional concerns have been allayed. We now address the merits of Midwest Federal Savings and Loan's (Midwest Federal) contention that the district court erroneously entered judgment for Barclay Square Properties and Brookhill Capital Resources (Barclay Square) following cross-motions for summary judgment. We affirm.

I. BACKGROUND

Barclay Square and Midwest Federal submitted a Statement of Undisputed Facts

1. Jurisdiction is premised on diversity of citizenship. In its original complaint, however, Barclay Square Properties failed to set forth the citizenship of each of its limited partners. *See Carden v. Arkoma Assocs.*, 494 U.S. 185, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990); *Stouffer Corp. v. Breckenridge*, 859 F.2d 75 (8th Cir. 1988). On remand, the district court allowed the plaintiffs to amend their complaint and held an evidentiary hearing to resolve a dispute concerning the citizenship of one of the limited partners. The district court found that the parties are diverse. This holding has not been appealed.

in conjunction with their motions for summary judgment. The district court adopted the statement, and we summarize the relevant portions. Barclay Square, in 1986, entered into an agreement to purchase the Barclay Square Shopping Center located in Rochester, Minnesota. In connection with the sale, Joseph Weis, the general partner of the partnership selling the shopping center, agreed to guarantee a certain amount of yearly income from the property for a period of five years. The guarantee required Weis to deliver $750,000 in cash, or a combination of cash and a letter of credit from an acceptable banking institution, to the escrow agent at closing.

On June 13, 1986, Weis obtained a letter of credit in the amount of $250,000 from Midwest Federal. The letter authorized Barclay Square to draw on the letter upon presentation of a draft marked "[d]rawn under Midwest Federal Savings and Loan Association of Minneapolis Letter of Credit No. 1060, dated June 13, 1986," accompanied by

> [Barclay Square's] statement signed by an authorized general partner of Brookhill Capital Resources, Inc., whose signature is properly notarized, certifying that "the Barclay Square Associates Limited Partnership [the selling partnership] has defaulted under the terms and conditions of an escrow agreement, dated May 13, 1986, between Barclay Square Associates Limited Partnership and Barclay Square Properties, which is attached hereto and incorporated herein by reference as Exhibit "A", or that the Barclay Square Associates Limited Partnership has failed to replace this Letter of Credit if necessary thirty days prior to its expiration date."

Exhibit 1. Under the provisions of the letter, Midwest Federal promised to honor drafts drawn in compliance with its terms and presented on or before May 13, 1987, the letter's expiration date.

On July 28, 1986, Weis, Barclay Square, and Midwest Federal entered into an escrow agreement under which Midwest Federal agreed to act as the escrow agent. The agreement provided:

> 1. That [Weis] shall on the date of this Agreement and by this Agreement escrow with [Midwest Federal] the total sum of $750,000.00 as evidenced by irrevocable Letter of Credit issued by [Midwest Federal] in the amount of $250,-000.00 and a cash deposit in an interest bearing account in the amount of $500,-000.00....
>
> ....
>
> 7. ... In the event [Weis] fails to renew the Letter of Credit at least thirty (30) days prior to expiration, [Midwest Federal] shall present same for payment and hold the proceeds thereof in escrow.

Exhibit D. The agreement provided that Barclay Square could draw on the funds held in the escrow account upon written instructions from Barclay Square and Weis, in accordance with the provisions of the guarantee of income.

Pursuant to the escrow agreement, Midwest Federal disbursed cash from the escrow account to Barclay Square. These disbursements were paid, as provided in the agreement, first from earned interest and then from the cash held in the account. Draws on the letter of credit were to be the final source of funds. Barclay Square did not attempt to draw on the letter of credit. And, as would have been required to draw on the letter, Barclay Square did not inform Midwest Federal that Weis had either defaulted on the escrow agreement or that Weis had failed to replace the letter. The letter expired, by its terms, on May 13, 1987.

The escrow account presently contains approximately $162,000. However, it contains neither the letter of credit nor its proceeds. In August 1987, Barclay Square commenced an action in Minnesota state court alleging, inter alia, that it has been wrongly denied payment of funds from the escrow account. In September 1988, Barclay Square filed this suit, alleging that Midwest Federal's failure to present the letter for payment thirty days before it expired was a breach of the escrow agreement. The district court agreed and granted Barclay Square's motion for summary judgment.

On appeal, Midwest Federal contends that it is not liable for breach of the escrow agreement because, even if presented, the letter could not have been drawn upon without certain documents that only Barclay Square could have supplied. Further, Midwest Federal's obligation to present the letter was contingent upon notice from Barclay Square that the letter had not been renewed. Midwest Federal also asserts that summary judgment was not proper because material disputes of fact exist concerning both its duties under the escrow agreement and certain affirmative defenses.

## II. DISCUSSION

We review de novo the district court's order granting a motion for summary judgment and apply the same standard the district court applied. *Suburban Newspapers v. Kroger Co.*, 886 F.2d 1060, 1061 (8th Cir.1989). Summary judgment is proper when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Suburban Newspapers*, 886 F.2d at 1061. Although Midwest Federal asserts that summary judgment is not proper because factual disputes exist, we disagree. The resolution of this dispute depends on interpretation of the written instruments. Thus, we need consider only the legal issue, that is, whether the district court properly granted summary judgment in favor of Barclay Square. *See Chergosky v. Crosstown Bell, Inc.*, 463 N.W.2d 522, 525 (Minn.1990) ("When the intention of the parties to a contract is totally ascertainable from the writing, construction is for the court.").

We must determine the nature of the obligations Midwest Federal assumed under the terms of the escrow agreement. Specifically, we must ascertain whether Midwest Federal was required, under paragraph seven of the agreement, to present the letter of credit for payment when Weis failed to renew the letter thirty days prior to its expiration. Midwest Federal's principal argument is that it cannot be liable for failing to complete the futile task of presenting the letter for payment without the required documentation. Included in this contention is the argument that Midwest Federal had no duty under the agreement either to investigate whether the letter had been renewed or to obtain the documents required to properly present the letter for payment.

An escrow agent is bound by the terms and conditions of the escrow agreement. The agent must strictly comply with the agreement and is liable for loss caused by its failure to adhere to the terms of the contract. *See Barrett v. Messer*, 115 Minn. 476, 132 N.W. 991 (1911); *Murray v. Foskett*, 114 Minn. 44, 130 N.W. 14 (1911), *overruled on other grounds, Merchants' & Farmers' State Bank v. Olson*, 189 Minn. 528, 250 N.W. 366, 368 (1933). *See also* 28 Am.Jur.2d *Escrow* § 16 (1966) ("Where a person assumes to and does act as the depository in escrow, he is absolutely bound by the terms and conditions of the deposit and charged with a strict execution of the duties voluntarily assumed. He is held to strict compliance with the terms of the escrow agreement...." (footnotes omitted)); *id.* § 18 ("If [an escrow agent] violates instructions or acts negligently he is ordinarily liable for any loss occasioned by his breach of duty.").

■ Before we address Midwest Federal's principal argument, we must determine what Midwest Federal's duties were under the escrow agreement. As indicated, Midwest Federal contends that it had no duty to investigate whether the letter had been renewed and that Barclay Square failed to notify it that the letter had not been renewed. Midwest Federal correctly asserts that the agreement does not explicitly require it to conduct an investigation. However, we must interpret the terms of the escrow agreement to give effect to each provision. "Because of the presumption that the parties intended the language used to have effect, we will attempt to avoid an interpretation of the contract that would render a provision meaningless." *Chergosky*, 463 N.W.2d at 526.

The terms of the agreement are clear: "In the event [Weis] fails to renew the

Letter of Credit at least thirty (30) days prior to expiration, [Midwest Federal] shall present same for payment and hold the proceeds thereof in escrow." If the letter, which Midwest Federal held in escrow, was not renewed thirty days prior to its expiration, then Midwest Federal was required to present it for payment. The agreement specifies no other preconditions to Midwest Federal's obligation. Midwest Federal, however, contends that, because Barclay Square was in a better position to know whether the letter had been renewed, Midwest Federal was obligated to present the letter only if Barclay Square notified it that Weis had not renewed the letter. Not only is this position unsupported by the agreement, but Barclay Square was not necessarily in a better position to know whether the letter had been renewed. Midwest Federal held the letter in escrow and presumably would have also held a renewal letter. Midwest Federal is responsible for knowing what documents it holds in escrow and what its obligations are under those documents. When the escrow account did not contain a renewed letter thirty days prior to expiration, Midwest Federal should have presented the letter for payment and placed the proceeds in the account. Midwest Federal's failure to do so was a breach of the escrow agreement.[2]

 On its face, Midwest Federal's main argument, that it would have been futile to present the letter for payment without documentation that only Barclay Square could have supplied, is somewhat more troubling. We agree, as noted, with the district court's conclusion that Midwest Federal, as escrow agent, should have presented the letter for payment. The district court also determined that the letter's documentary requirements applied only when Barclay Square presented the letter and declined to identify any documents that might have been required for proper presentment by Midwest Federal. Instead, the court held that Midwest Federal, as issuer, would have known that Midwest Federal, as escrow agent, was presenting the letter for a valid purpose and would have allowed the draw. While we affirm the judgment, we disagree with this analysis.

Midwest Federal strongly argues that the letter was not payable without presentation of the specified documents and that holding it liable for failure to present the letter when it did not have the necessary documents would amount to a violation of the doctrine of strict compliance with the terms of a letter of credit. We agree that the letter was only payable upon presentment of the letter and the specified documents. However, we disagree that this conclusion exonerates Midwest Federal from liability. We hold that the escrow agreement required Midwest Federal to obtain the documents required for a proper presentment. The obligation to present the letter for payment was clear. The agreement need not set forth the exact procedures to be followed to fulfill that obligation. To hold otherwise would render paragraph seven meaningless. Thus, Midwest Federal had an obligation to obtain the necessary documents from Barclay Square and present them with the letter for payment. Had it been unable to do so, we would have a different case.

## III. CONCLUSION

Midwest Federal's other assignments of error are without merit. The judgment of the district court granting Barclay Square's motion for summary judgment is affirmed.

---

**2.** Midwest Federal provides an alternative interpretation of the escrow agreement. It contends that paragraph seven of the escrow agreement was intended solely to prevent Barclay Square from receiving payment under the terms of the letter without the proceeds being placed into the escrow account. The letter provides that Barclay Square may present the letter for payment if the letter needs to be, but has not been, replaced thirty days before it expires. The escrow agreement, however, does not connect Midwest Federal's duty to present with Barclay Square's ability to present, and does not address what happens to the proceeds of the letter in the event Barclay Square presents the letter under this provision. We find no language in the escrow agreement to support Midwest Federal's interpretation.