*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0218**

Sheryl Aarnio, et al.,
Appellants,

vs.

Village Bank, et al.,
Defendants,

Christensen Law Office, PLLC, third party petitioner,
Respondent.

**Filed November 3, 2014
Affirmed
Larkin, Judge**

Chisago County District Court
File No. 13-CV-11-773

Wayne B. Holstad, Frederic W. Knaak, Holstad & Knaak, PLC, St. Paul, Minnesota (for appellants)

Carl E. Christensen, Kevin Lampone, Christensen Law Office PLLC, Minneapolis, Minnesota (for respondent)

Considered and decided by Smith, Presiding Judge; Larkin, Judge; and Bjorkman, Judge.

UNPUBLISHED OPINION

**LARKIN**, Judge

Appellant clients challenge the district court's grant of respondent law firm's request for an attorney lien, arguing that the parties' retainer agreement unambiguously caps attorney fees at $10,000. Because it is clear from the plain language of the retainer agreement that a $10,000 cap on attorney fees does not apply, we affirm.

## FACTS

This appeal stems from a dispute regarding the amount of an attorney lien. Appellant Sheryl Aarnio[1] sought legal representation regarding a business loan that was secured by a mortgage on her home. Aarnio claimed that her former business partner, Craig Beuning, fraudulently procured the mortgage. After communicating regarding potential attorney-fee arrangements, Aarnio and respondent Christensen Law Office PLLC (the firm), executed a written attorney-retainer agreement.

The firm brought a lawsuit on behalf of Aarnio, suing Village Bank, Craig Beuning, GMAC Mortgage Corporation, John Doe Trust, JP Morgan Chase Bank, and The RiverBank. During the course of the firm's representation, the district court awarded partial summary judgment to Aarnio, voiding the fraudulent mortgage and granting Aarnio quiet title to the property. After months of litigation, Beuning was the only remaining defendant. Aarnio agreed to settle her claims against Beuning for $1,500, which resolved the remaining claims in her case. The settlement agreement did not provide for payment of Aarnio's attorney fees and costs.

---

[1] Thomas Aarnio is also a named appellant in this case.

After the settlement, Aarnio contacted the firm and asked "why under the representation agreement [she has] to pay . . . all [the] fees." Later, Aarnio e-mailed the firm:

> It was my understanding from the beginning of this process [that my] fees would be capped at $10,000, which your firm has been paid. The retainer agreement had a lot of detail and Christen [sic] Law should have made it more specific in their language if the mortgage was voided. This was the firm's responsibility to make changes to the retainer agreement during the representation. As of today, I was served with documentation from Chicago Title trying to collect the $168K+ they paid to [the mortgage lender] and attorney fees. Now I have to deal with that. I am sorry, but I will not be offering any additional fees to be paid to the firm.

The firm withdrew as Aarnio's counsel and filed a third-party petition for an attorney lien against Aarnio's property in the amount of $47,500.39. The district court held a hearing on the petition and ruled that the parties' retainer agreement was ambiguous. Later, the district court held an evidentiary hearing to ascertain the parties' intent. The district court ruled in favor of the firm and ordered that "[a]n attorney's lien in the amount of $47,500.39 shall be entered in favor of Christensen Law Office." Aarnio appeals.

## DECISION

"An attorney has a lien for compensation . . . upon the interest of the attorney's client in any money or property involved in or affected by any action or proceeding in which the attorney may have been employed." Minn. Stat. § 481.13, subd. 1(a) (2012). Such lien "may be established, and the amount of the lien may be determined, summarily by the court under this paragraph on the application of the lien claimant or of any person

3

or party interested in the property subject to the lien." *Id*., subd. 1(c) (2012). "When there is an express agreement between an attorney and a client that sets the attorney's compensation, the amount of the attorney's lien for legal services is properly determined by reference to the agreement." *Dorsey & Whitney LLP v. Grossman*, 749 N.W.2d 409, 418 (Minn. App. 2008).

The retainer agreement in this case states, in relevant part:

> CLIENTS agree to pay ATTORNEY for these legal services the fees computed as follows:
>
> 1.     In the event, CLIENTS prevail at trial, ATTORNEY agrees to seek an award of attorney's fees. In seeking this award, ATTORNEY shall submit an itemization of time spent and out of pocket expenses and disbursements incurred, employing ATTORNEY'S customary hourly rate for cases of this kind in effect at the time of the entry of judgment, which is currently $275 for time spent by Carl Christensen, $225 for time spent by associates, $150 per hour for time spent by legal assistants, and $130 for time spent by law clerks. If the Court awards attorney's fees as requested, those fees will represent ATTORNEY'S fees for the case. If the Court does not order such award, or if the award is not adequate compensation to ATTORNEY for ATTORNEY'S services (i.e. less than the number of hours expended by ATTORNEY in this case times ATTORNEY'S hourly rate in effect at the time of the entry of judgment), then CLIENT shall pay ATTORNEY as attorney's fees the greater of the following:
>
> > a.     one-third of the total monetary award recovered from all Defendants including any award of attorney's fees, compensatory or punitive damages, costs and disbursements, or other money damages; or
> > b.     the amount actually awarded as attorney's fees by the Court.
>
> 2.     In the event CLIENTS enter a stipulated settlement in their claim or claims against any or all Defendants and such settlement does not provide for an award of attorney's fees in

4

an amount sufficient to compensate ATTORNEY for ATTORNEY'S services at ATTORNEY'S hourly rates in effect at the time of the settlement, CLIENTS agree to pay ATTORNEY the remainder as determined in paragraph 1.

3.      If there is no recovery, CLIENTS will pay fees and expenses as calculated in paragraph 1 capped at $10,000.

4.      IN THE EVENT OF A STRUCTURED SETTLEMENT whereby CLIENTS receive their recovery over a period of time, (1) ATTORNEY shall receive full payment for expenses from the initial payment made under the structured settlement agreement, and (2) ATTORNEY and CLIENTS will address the issue of the timing of the payment of fees and make it the subject of a written agreement between them.

5.      In the event that CLIENTS terminate ATTORNEY as his/her legal representative before the completion of representation in this action, CLIENTS shall pay ATTORNEY on an hourly basis at the rates fixed in paragraph 1, above, for all legal services and expenses incurred in the defense and prosecution of this matter to the date of termination.

"The primary goal of contract interpretation is to determine and enforce the intent of the contracting parties." *Id.* at 418. "When interpreting a written instrument, the intent of the parties is determined from the plain language of the instrument itself." *Id.* (quotation omitted). But when a contract's terms are ambiguous, courts may rely on parole evidence to determine the parties' intent. *Dykes v. Sukup Mfg. Co.*, 781 N.W.2d 578, 582 (Minn. 2010). "A contract is ambiguous . . . if it is reasonably susceptible of more than one interpretation." *Grossman*, 749 N.W.2d at 419 (quotation omitted). "Whether a contract provision is ambiguous is a question of law, which we review de novo." *Id.*

5

Aarnio contends that "the retainer agreement was not ambiguous and it clearly stated that the legal fees would be capped at $10,000.00 unless the attorneys obtained an award of attorney fees against and from the defendants or a monetary cash judgment." Aarnio's contention is based on paragraph three of the retainer agreement. Aarnio argues that the word "recovery" in paragraph three refers to a recovery of attorney fees and not to any other type of recovery. Aarnio asserts that "recovery" is defined in paragraphs 1.a. and 1.b., which describe the following alternative methods of computing attorney fees: "one-third of the total monetary award recovered from the Defendants" or "the amount actually awarded as attorney's fees by the Court." Aarnio concludes that because "[n]either of those contingencies occurred in this case," fees are capped at $10,000 under paragraph three.[2]

For the reasons that follow, we disagree with Aarnio's contention that paragraph three governs the computation of attorney fees in this case. First, Aarnio's assertion that "[t]he primary statement of fees is that the legal fees would be $10,000 and that amount was capped" runs counter to the surrounding paragraphs. *See Chergosky v. Crosstown Bell, Inc.*, 463 N.W.2d 522, 525 (Minn. 1990) ("We construe a contract as a whole and attempt to harmonize all clauses of the contract."). Paragraph three sets forth one of several methods of computing attorney fees. The method to be used depends on the circumstances (e.g., "[i]n the event[] CLIENTS prevail at trial," "[i]n the event CLIENTS enter a stipulated settlement," "[i]f there is no recovery," and "[i]n the event that CLIENTS terminate ATTORNEY as his/her legal representative."). Because the method

---

[2] Aarnio does not otherwise challenge the amount of the attorney's lien.

6

to be used depends on the particular circumstances and those circumstances may be exclusive or overlap, we disagree that the retainer agreement sets forth one "primary" method of computing attorney fees.

Second, Aarnio's argument that the word "recovery" in paragraph three clearly—and only—refers to a recovery of attorney fees is not persuasive because the retainer agreement uses the word "recovery," or other forms of the word, to describe damages other than attorney fees. *See id.* For example, paragraph 1.a. refers to "the total monetary award recovered from all Defendants including any award of attorney's fees, compensatory or punitive damages, costs and disbursements, or other money damages." Paragraph four also uses the word "recovery" in a way that suggests that a recovery may include monetary damages as well as attorney fees.

Third, Aarnio's use of the word "recovery" is inconsistent with common usage of the word. *See Brookfield Trade Ctr., Inc. v. Cnty. of Ramsey*, 584 N.W.2d 390, 394 (Minn. 1998) ("In interpreting a contract, the language is to be given its plain and ordinary meaning."). For example, *Black's Law Dictionary* defines recovery as "1. The regaining or restoration of something lost or taken away. 2. The obtainment of a right to something (esp. damages) by a judgment or decree. 3. An amount awarded in or collected from a judgment or decree." *Black's Law Dictionary* 1389 (9th ed. 2009). As a result of the firm's legal services, the district court voided the fraudulent mortgage on Aarnio's property, valued at approximately $146,000, and Aarnio settled her claims against Beuning for $1,500. The voiding of the mortgage and the $1,500 settlement payment both fall under the commonly understood meaning of "recovery."

In sum, the language of the retainer agreement does not support Aarnio's contention that the word "recovery" in paragraph three refers only to attorney fees or her conclusion that paragraph three therefore governs the computation of attorney fees. Because paragraph three states that Aarnio's fees would be capped at $10,000 if there was "no recovery" and she obtained a recovery, paragraph three is inapplicable. Instead, because Aarnio "enter[ed] a stipulated settlement [of her] claim or claims against any or all Defendants and such settlement does not provide for an award of attorney's fees," paragraph two governs the computation of attorney fees.

Although it is clear from the plain language of the retainer agreement that the $10,000 cap under paragraph three does not apply, we note that the extrinsic evidence confirms that the parties did not intend to cap legal fees under the circumstances here. The district court determined that "[t]he testimony of the parties and the Exhibits establish that at the time the Retainer Agreement was signed neither party intended that attorney fees would be capped at $10,000 in the event of a voiding of the mortgage." The record evidence supports the district court's determination.[3]

Carl Christensen, the firm's founder, testified that he explained to Aarnio that she would pay the $10,000 retainer and that if they were able to prevail on the case at trial or if the case was settled, she would be responsible for fees in the amount of one-third of the cost of the voided mortgage or the actual amount of fees expended by the firm.

---

[3] In fact, Aarnio does not challenge the district court's findings regarding the parties' intent.

Christensen also testified that he told Aarnio that the fees in the case would likely reach $35,000 or more and that the firm sent monthly billing statements to Aarnio.

Dan Eaton, an attorney at the firm who worked on Aarnio's case, testified that near the time of settlement, Aarnio indicated that she did not want to incur the costs of a trial. Eaton testified that Aarnio told him that her business partners would pay some of her attorney fees. Eaton also testified that he explained the fees to Aarnio so that she could communicate those fees to her partners.

The record evidence also includes several e-mails from Aarnio to the firm indicating that she anticipated paying more than $10,000 in fees. For example, on April 18, 2001, Aarnio wrote:

> Payment of Fees .. . Can you please extend the balance by June 15, 2011?
> Also . . . I thought you stated that $10,000 upfront and depending on if we won or lost, we would get refunded or pay what is owed? Did I misunderstand this?

The next day, Aarnio wrote:

> [W]hat do you mean by monetary award?[]
> [If] you have the mortgage declared invalid and removed from the property[,] [w]ould I owe you 1/3 of that amount which is about $146,000 and all fees?
> Of if you get them [to] pay us back the monies that we paid on the loan[,] 1/3 of this amount with the above mortgage being invalid $146,000?

The district court acknowledged Aarnio's testimony that "she believed her fees would be capped at $10,000 and that the law firm would cover additional expenses." Nonetheless, the district court found that "neither party intended that attorney fees would be capped at $10,000 in the event of a voiding of the mortgage." The district court's

finding that the parties' mutual intent was contrary to Aarnio's testimony is based on a credibility determination to which we defer. *See* Minn. R. Civ. P. 52.01 ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the [district] court to judge the credibility of the witnesses.").

In conclusion, it is clear from the plain language of the retainer agreement that the $10,000 cap on attorney fees does not apply. Because Aarnio does not otherwise challenge the amount of the attorney lien ordered by the district court, we affirm.

**Affirmed.**