*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1850**

Waseca County, et al.,
Appellants,

vs.

Minnesota Department of Transportation,
Respondent.

**Filed June 27, 2016
Affirmed
Schellhas, Judge**

Steele County District Court
File No. 74-CV-15-991

Justin P. Weinberg, Jonathan P. Schmidt, W. Knapp Fitzsimmons, Briggs and Morgan, P.A., Minneapolis, Minnesota (for appellants)

Lori Swanson, Attorney General, Stephen D. Melchionne, Assistant Attorney General, St. Paul, Minnesota (for respondent)

        Considered and decided by Schellhas, Presiding Judge; Peterson, Judge; and Reyes, Judge.

# UNPUBLISHED OPINION

**SCHELLHAS**, Judge

        Appellants challenge the district court's rule-12.02(e) dismissal of their complaint.

We affirm.

## FACTS

We set forth the facts as alleged in the complaint and its exhibits. *See Walsh v. U.S. Bank, N.A.*, 851 N.W.2d 598, 601, 606 (Minn. 2014) (stating that, when reviewing the rule-12.02(e) dismissal of a complaint, "[appellate courts] accept the facts alleged in the complaint as true and construe all reasonable inferences in favor of the nonmoving party"). In December 2012, respondent Minnesota Department of Transportation (MnDOT) released to appellants Waseca County and Steele County (the counties) portions of Old Trunk Highway No. 14 (Old Highway 14) that were located in the counties. The counties initiated separate lawsuits, which were later consolidated, alleging, among other things, that MnDOT was not permitted to "revert [Old Highway 14] to the Counties without an agreement in place at the time of the reversion."

In January 2014, the counties and MnDOT executed a settlement agreement and release. The settlement agreement requires MnDOT to perform certain work at its expense on several segments of Old Highway 14. As to Waseca County Segments 1, 3, and 5 and Steele County Segment 2 (subject highway segments), which are at issue in this case, MnDOT agreed to "reclaim to aggregate the existing shoulders."[1] And MnDOT agreed that all of its work would "be completed in accordance with applicable Minnesota Statutes, MnDOT Rules, and MnDOT [T]echnical Design Standards."

---

[1] "[A]ggregate" means "[t]he mineral materials, such as sand or stone, used in making concrete." *The American Heritage Dictionary of the English Language* 33 (4th ed. 2006) [hereinafter *American Heritage Dictionary*].

2

In April 2015, the counties sued MnDOT, claiming that MnDOT-issued Technical Memorandum No. 12-12-TS-06 (technical memorandum) requires, "at least in part, paved shoulders" for the subject highway segments and alleging that MnDOT ignored the technical memorandum's design requirements by instructing a third-party design engineer that the shoulders of the subject highway segments should be aggregate. The counties sought a declaratory judgment that the shoulders of the subject highway segments must be paved in accordance with the technical memorandum. MnDOT moved to dismiss the counties' complaint for failure to state a claim on which relief can be granted. The district court granted MnDOT's motion.

This appeal follows.

## D E C I S I O N

"When reviewing a case dismissed pursuant to Minn. R. Civ. P. 12.02(e) for failure to state a claim on which relief can be granted, the question before [an appellate] court is whether the complaint sets forth a legally sufficient claim for relief." *Hebert v. City of Fifty Lakes*, 744 N.W.2d 226, 229 (Minn. 2008). "[Appellate courts] review de novo whether a complaint sets forth a legally sufficient claim for relief." *Walsh*, 851 N.W.2d at 606. Although "[appellate courts] accept the facts alleged in the complaint as true and construe all reasonable inferences in favor of the nonmoving party," *id.*, "a legal conclusion in the complaint is not binding on [an appellate court]," *Bahr v. Capella Univ.*, 788 N.W.2d 76, 80 (Minn. 2010).

A pleading must "contain a short and plain statement of the claim showing that the pleader is entitled to relief and a demand for judgment for the relief sought." Minn. R. Civ.

3

P. 8.01. "A claim is sufficient against a motion to dismiss for failure to state a claim if it is possible on any evidence which might be produced, consistent with the pleader's theory, to grant the relief demanded." *Walsh*, 851 N.W.2d at 603.

In this case, the district court dismissed the counties' complaint, concluding that "the plain and unambiguous language of the [settlement agreement] requires only that [MnDOT] reclaim the shoulder of the [subject highway segments] to aggregate." The counties argue that the district court erred in its interpretation of the settlement agreement because the agreement incorporates MnDOT's technical design standards and those standards require paved shoulders on the subject highway segments. "In deciding a motion to dismiss, [a] court 'may consider the entire written contract when the complaint refers to the contract and the contract is central to the claims alleged.'" *Baker v. Best Buy Stores, LP*, 812 N.W.2d 177, 180 (Minn. App. 2012) (quoting *In re Hennepin Cty. 1986 Recycling Bond Litig.*, 540 N.W.2d 494, 497 (Minn. 1995)), *review denied* (Minn. Apr. 25, 2012).

> A settlement agreement is a contract, and [appellate courts] review the language of the contract to determine the intent of the parties. When the language is clear and unambiguous, [appellate courts] enforce the agreement of the parties as expressed in the language of the contract. But if the language is ambiguous, parol evidence may be considered to determine intent. Whether a contract is ambiguous is a question of law that [appellate courts] review de novo. The language of a contract is ambiguous if it is susceptible to two or more reasonable interpretations.

*Dykes v. Sukup Mfg. Co.*, 781 N.W.2d 578, 581–82 (Minn. 2010) (citations omitted).

Paragraph 2 of the settlement agreement describes the "Work" or "Project" that MnDOT agreed to complete, at its expense, on several segments of Old Highway 14. As to the subject highway segments, paragraph 2A provides:

> MnDOT agrees to complete highway preservation work as follows: mill of up to 4[ inches] (including appropriate patching), and pave a 5[-inch] unbonded concrete overlay with a width of 24[ feet] consistent with MnDOT Rules and Technical Design Specifications (construction means and methods will, at a minimum, satisfy the requirements of MnDOT's State-Aid Rules), in the above-referenced sections, as shown in attached Exhibit D. *MnDOT will reclaim to aggregate the existing shoulders.*

(Emphasis added.) Exhibit D to the settlement agreement contains five diagrams of the four subject highway segments; each diagram shows a point at which to "RECLAIM TO AGG SHOULDER." And the notes to Exhibit D state, "NEW CLASS 2 SHOULDER AGGREGATE BASE WHICH WILL CONSIST OF RECLAIMED BITUMINOUS SHOULDERS TO BE UTILIZED TO BRING NEW SHOULDERS FLUSH WITH NEW CONCRETE SURFACE."[2]

Paragraph 9 of the settlement agreement provides that "[a]ll of MnDOT's Work will be completed in accordance with applicable Minnesota Statutes, MnDOT Rules, and MnDOT [T]echnical Design Standards." The counties argue that paragraph 2A requires, "*at a minimum*," that MnDOT restore the shoulders of the subject highway segments to

---

[2] "[B]ituminous" means "[l]ike or containing bitumen," which is "[a]ny of various flammable mixtures of hydrocarbons and other substances, occurring naturally or obtained by distillation from coal or petroleum, that are a component of asphalt and tar and are used for surfacing roads and for waterproofing." *American Heritage Dictionary*, *supra*, at 189.

aggregate but that paragraph 9 incorporates the technical memorandum and requires MnDOT to pave the shoulders on the subject highway segments. We are not persuaded.

First, the specific terms of the settlement agreement govern over the general terms of the agreement. *See Burgi v. Eckes*, 354 N.W.2d 514, 519 (Minn. App. 1984) (stating that "the specific in a writing governs over the general"); *see also Egner v. States Realty Co.*, 223 Minn. 305, 314, 26 N.W.2d 464, 470 (1947) (stating, when interpreting a contract, that "the definite prevails over the indefinite"). We conclude, as did the district court, that the language in paragraph 2A of the settlement agreement—that "MnDOT will reclaim to *aggregate* the existing shoulders"—is more specific than the general language in paragraph 9, which incorporates MnDOT's rules and design standards. (Emphasis added.)

Second, the purpose of the technical memorandum is "to update the MnDOT shoulder width design criteria," which "will provide for more design flexibility in roadway shoulder design." MnDOT recognized in the technical memorandum that "[m]any state transportation departments have been turning to flexible design as a solution to resolving various transportation challenges" and that "[t]he benefits of flexible design allow for a greater sensitivity to the design needs of multiple travel modes, the local community, and the surrounding environment." Nothing in the technical memorandum requires rigid adherence to the "[g]uidelines" that it provides.

The counties also argue that paragraph 2A and paragraph 9 conflict, resulting in ambiguity as to the parties' intent. "Where there is an apparent conflict between two clauses or provisions of a contract, it is the court's duty to find harmony between them and to reconcile them if possible." *Oster v. Medtronic, Inc.*, 428 N.W.2d 116, 119 (Minn. App.

6

1988) (citing *Lawton v. Joesting*, 96 Minn. 163, 167, 104 N.W. 830, 832 (1905)). "[Appellate courts] are to interpret a contract in such a way as to give meaning to all of its provisions." *Brookfield Trade Ctr., Inc. v. Cty. of Ramsey*, 584 N.W.2d 390, 394 (Minn. 1998); *see also Chergosky v. Crosstown Bell, Inc.*, 463 N.W.2d 522, 526 (Minn. 1990) (stating that "[appellate courts] will attempt to avoid an interpretation of the contract that would render a provision meaningless"). "[Appellate courts] construe a contract as a whole and attempt to harmonize all clauses of the contract." *Chergosky*, 463 N.W.2d at 525; *see also Burgi*, 354 N.W.2d at 518 ("Terms in a contract should be read together and harmonized where possible." (citing *Country Club Oil Co. v. Lee*, 239 Minn. 148, 151–52, 58 N.W.2d 247, 249 (1953))).

Paragraph 2A clearly and unambiguously provides that "MnDOT will reclaim to aggregate the existing shoulders." We conclude that to read paragraph 9 as requiring MnDOT to pave the shoulders of the subject highway segments would render meaningless the quoted language from paragraph 2A. "[The supreme court] ha[s] consistently stated that when a contractual provision is clear and unambiguous, courts should not rewrite, modify, or limit its effect by a strained construction." *Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 364–65 (Minn. 2009). We therefore harmonize paragraph 2A and paragraph 9 by reading paragraph 2A as establishing the scope of MnDOT's work under the settlement agreement and paragraph 9 as providing guidance as to the manner in which the agreed-upon work will be performed if not otherwise set forth by the parties in paragraph 2.

We conclude that the clear and unambiguous language of the settlement agreement precludes the relief demanded by the counties and that the counties' complaint therefore is legally insufficient. *See Walsh*, 851 N.W.2d at 603 ("A claim is sufficient against a motion to dismiss for failure to state a claim if it is possible on any evidence which might be produced, consistent with the pleader's theory, to grant the relief demanded."). The district court did not err in dismissing the complaint for failure to state a claim on which relief can be granted.

**Affirmed.**