**CARLSON REAL ESTATE COMPANY,**
**a Minnesota Limited Partnership,**
**Respondent,**

v.

**Mahmoud SOLTAN, Appellant.**

**No. C4–95–1754.**

Court of Appeals of Minnesota.

June 11, 1996.

Review Denied Aug. 20, 1996.

---

Lawrence J. Field, Gregory R. Fitzharris, Leonard, Street & Deinard, P.A., Minneapolis, for Respondent.

John M. Mulligan, Mark S. Radke, Mulligan & Bjornnes, P.L.L.P., Minneapolis, for Appellant.

Considered and decided by DAVIES, P.J., and HARTEN and WILLIS, JJ.

## OPINION

DAVIES, Judge.

Appellant argues that the trial court erred by ordering restitution in favor of respondent landlord. We affirm.

## FACTS

Appellant Mahmoud Soltan leased from respondent Carlson Real Estate Company (Carlson) two retail spaces—a convenience store and a gift store—in the skyway of the Plaza VII building in Minneapolis. Section 5.5(a) of the written lease required Soltan to

[c]onduct and remain open for business in the Premises in good faith and in a reputable manner during the [term of the lease and during specified hours].

The Radisson Hotel kitchen is located directly above Soltan's convenience store. Beginning in November of 1994, Soltan experienced problems with kitchen leakage and odors in the convenience store. Carlson cleaned Soltan's store and repaired the kitchen floor and the trench drain system located above the store's false ceiling.

Soltan's convenience store was closed from mid-January to early May 1995, but even after the store reopened Soltan continued to complain of odors and leaks and closed the convenience store again on June 2. Carlson assured Soltan that steps were being taken to fix the leaks and asked Soltan to reopen the store and operate it pursuant to the parties' lease agreement. Soltan reopened the store, but trouble between the parties continued.

Carlson eventually brought this unlawful detainer action against Soltan. Carlson alleged that Soltan had breached the lease by failing to keep the convenience store open during the hours specified in the lease. Carlson also asserted that Soltan verbally threatened and abused store patrons, Radisson guests, Radisson employees, other tenants, police officers, and Carlson management personnel, and that Soltan thus failed to conduct his business in good faith and in a reputable manner as required by the lease.

Although the trial court ruled for Soltan on several issues, after a two-day bench trial the court ultimately granted Carlson restitution. The court held that Carlson's allegation that Soltan failed to remain open during the hours specified in the lease was "not proven in a way that violates the lease." With regard to Soltan's alleged failure to conduct his business in good faith and in a reputable manner, the court stated that, because that lease term does not have a clear meaning, the court would construe it in favor of Soltan. The court, therefore, ruled that conduct, to violate the provision, must relate to operation of the business.

In applying its construction of the lease provision, the court stated that it was disregarding evidence concerning a dispute between Soltan and both an employee of another Plaza VII tenant and the general manager of the Radisson Hotel. The court also indicated that it was disregarding evidence regarding unspecified incidents involving "management personnel and employees."

Nevertheless, the court concluded that the record contained evidence of other conduct toward customers and tenants sufficient to prove a violation of section 5.5(a) of the lease. The court specifically referred to an incident of profanity toward a customer described in exhibit seven. The court indicated that it did not rest its decision solely on that incident, which was neither offered nor received into evidence, but also upon

a number of other items of evidence indicating obscene or profane or otherwise disruptive kinds of comments and behavior by Mr. Soltan that satisfy [Carlson]'s burden * * *.

The trial court also rejected Soltan's argument that Carlson's ongoing breach precluded it from seeking restitution based on Soltan's subsequent breach. The court reasoned that Carlson's failure to make repairs neither caused nor justified Soltan's conduct.

## ISSUES

I. Did the trial court err by interpreting the phrase "conduct business in good faith and in a reputable manner" as prescribing a standard of conduct?

II. Is Carlson precluded from seeking restitution because of its continuing breach of the lease?

III. Did the trial court commit reversible error by basing its decision in part on exhibit seven, which was not received into evidence?

IV. Did the trial court err by ordering restitution where Carlson did not show at trial that Soltan had received a written notice of default and then failed to cure the default within 10 days?

## ANALYSIS

### I.

■ Soltan argues that the lease provision requiring him to operate his business "in good faith and in a reputable manner" does not establish a standard of conduct. Soltan argues that the provision should be read only to prevent him from circumventing the hours-of-operation requirement. We disagree.

■ This court must construe the challenged lease provision by applying principles of contract construction. *See Amoco Oil Co.*

v. Jones, 467 N.W.2d 357, 360 (Minn.App. 1991) ("A lease is a contract which should be construed according to ordinary rules of interpretation.").

To read this lease as Soltan suggests would render the "reputable manner" provision duplicative of the "hours of operation" provision. *See Chergosky v. Crosstown Bell, Inc.*, 463 N.W.2d 522, 526 (Minn.1990) (courts "attempt to avoid an interpretation of [a] contract that would render a provision meaningless").

■ In addition, we must give the language of the lease its plain meaning and interpret it "in the context of the entire agreement." *Hydra–Mac, Inc. v. Onan Corp.*, 450 N.W.2d 913, 916 (Minn.1990).

The plain language of section 5.5(a) requires Soltan to conduct his business "in a reputable manner." Further, section 5.5 as a whole supports the conclusion that section 5.5(a) sets out a standard of conduct.[1]

Reading section 5.5(a) in the context of the surrounding lease provisions and considering its plain language, we conclude that the trial court did not err by concluding that the phrase "in good faith and in a reputable manner" imposes a standard of conduct.

### II.

■ Soltan argues that Carlson's ongoing failure to fulfill its obligations to repair the Radisson kitchen precludes Carlson from seeking restitution for Soltan's subsequent breach. Under general contract law, a party who first breaches a contract is usually precluded from successfully claiming against the other party. *See Space Ctr, Inc. v. 451 Corp.*, 298 N.W.2d 443, 451 (Minn.1980) (first breaching party cannot use other party's subsequent breach to avoid liability); 17A C.J.S. *Contracts* § 458 (1963) ("party who commits the first breach is * * * deprived of

---

1. Section 5.5(b) requires Soltan to keep his stores stocked and to maintain sufficient personnel so that he can provide "proper" and efficient service to his customers. Section 5.5(c) requires Soltan to maintain displays in the display windows and to keep them "neatly dressed." Section 5.5(d) mandates that Soltan keep the display windows, signs, and exterior lights illuminated during business hours. Section 5.5(e) prohibits Soltan from holding "fire, going-out-of-business or similar sales or promotions." Section 5.5(f) requires Soltan to maintain fixtures and equipment "adequate, appropriate and properly laid out to sustain [Soltan]'s retail sales." Finally, section 5.5(g) prohibits Soltan from allowing concessionaires or licensees to operate in or from his shops without Carlson's consent.

the right to complain of a subsequent breach by the opposite party"). The first breach serves as a defense against the subsequent breach.

We have here, however, a situation where the contract, in effect, serves as a charter for a relationship between the two parties. Thus, although Carlson's breach might well have justified Soltan in terminating the lease, the breach does not justify Soltan in continuing the relationship under a new or modified charter. Soltan's remedies for Carlson's breach are damages or termination of the lease; the breach does not, however, excuse his own subsequent breach.

Soltan relies solely on *MTS Co. v. Taiga Corp.*, 365 N.W.2d 321 (Minn.App.1985), *review denied* (Minn. June 14, 1985). In *MTS*, this court held that the first breaching party could not sue on the basis of the other party's subsequent breach because (1) the initial breach was continuing at the time that the first breaching party brought the action against the subsequent breacher, and (2) the subsequent breach resulted directly from the initial breach. *Id.* at 327. *MTS*, thus, involved a situation where the first breach set off consequences that changed the rules governing the ongoing relationship.

In the present case, the second prong of the *MTS* test is not met. The trial court specifically found that, although Carlson failed to make prompt repairs required by the lease, Carlson's failure was not a direct cause of or a justification for Soltan's breaching conduct. The record does not show that the trial court clearly erred in so finding.

### III.

■ Soltan argues that the trial court committed reversible error by basing his decision in part on exhibit seven, which was not received into evidence. It is "elementary" that "findings and conclusions of the trial court must be drawn from the evidence in the record." *Johnson v. Commissioner of Pub. Safety*, 366 N.W.2d 347, 350 (Minn.App. 1985); *accord Green v. Independent Consol. Sch. Dist. No. 1*, 252 Minn. 36, 46, 89 N.W.2d 12, 19 (1958) (findings must be based exclusively on evidence received at trial). The trial court stated that it based its decision not on exhibit seven alone, but also on

> a number of other items of evidence indicating obscene or profane or otherwise disruptive kinds of comments and behavior by Mr. Soltan.

■ This court will reverse a trial court's findings of fact if, "upon review of the entire evidence, we are 'left with the definite and firm conviction that a mistake has been made.'" *In re Guardianship of Dawson*, 502 N.W.2d 65, 68 (Minn.App.1993) (quoting *Gjovik v. Strope*, 401 N.W.2d 664, 667 (Minn. 1987)), *review denied* (Minn. Aug. 16, 1993). Soltan argues that, after excluding exhibit seven, the evidence in the record does not support the trial court's conclusion that Soltan used obscene or profane language or engaged in other disruptive behavior that violated the lease. We disagree.

One of Carlson's other Plaza VII tenants, Douglas Sams, testified that he observed Soltan shout loudly and profanely near Soltan's premises. Both Sams and another tenant reported this incident to Plaza VII security and expressed concern that it was affecting their customers. The other tenant also reported that Soltan was playing music and singing very loudly. On another occasion, Sams observed Soltan raise his voice toward a customer who had patronized both Soltan and Sams. Sams testified that he has not seen the customer since that incident. Sams also testified that over a six-month period he witnessed Soltan engage in a series of incidents involving loud cursing.

Paul Poto, general manager of the Radisson, testified that it was not unusual for Soltan to be "ranting and raving out in the skyway, cursing under his breath to people." Poto testified that Radisson's guests complained about Soltan's behavior and that they had been harassed by Soltan. Kevin Brazner, the Plaza VII property manager, testified that he received a report regarding an incident between a hotel guest and Soltan.

Soltan himself testified that his wife wrote a letter in which she stated that "Mr. Soltan did call the hotel guest a 'b——h.'" Soltan conceded that it is possible that he used profanity while working in his store.

This court "must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." Minn.R.Civ.P. 61. We conclude that evidence in the record supports the trial court's conclusion that Soltan breached the lease and that, therefore, the trial court's error in considering exhibit seven was harmless.

## IV.

 Section 13.1 of the lease provides that Carlson can terminate the lease if Soltan

fails to perform any of the * * * terms, conditions, covenants and obligations of this Lease * * * for more than 10 days after [Carlson] gives [Soltan] written notice of such default * * *.

Soltan argues that Carlson failed to present evidence showing first that it gave written notice of breach and then that Soltan failed to cure his default during the 10–day period after receiving such notice.

We conclude that the provision for cure in lease section 13.1 does not apply to Soltan's default because his continuing breach—despite appropriate warnings—was not the type of default that is susceptible to cure. Application of the cure provision to this breach would allow Soltan to continue his prohibited conduct indefinitely, so long as there were intermittent 10–day cure periods. That is not a rational interpretation.

## DECISION

The trial court did not err by ordering restitution in favor of respondent Carlson.

**Affirmed.**