*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0190**

Sterling State Bank,
Respondent,

vs.

Maas Commercial Properties, LLC, et al.,
Appellants.

**Filed September 2, 2014
Affirmed
Schellhas, Judge**

Dakota County District Court
File No. 19HA-CV-10-3035

Tracy J. Morton, Apple Valley, Minnesota (for respondent)

John M. Koneck, Peter J. Diessner, Fredrikson & Byron, P.A., Minneapolis, Minnesota (for appellants)

        Considered and decided by Peterson, Presiding Judge; Schellhas, Judge; and Huspeni, Judge.[*]

**U N P U B L I S H E D   O P I N I O N**

**SCHELLHAS**, Judge

        Appellants argue that a genuine issue of material fact precluded the district court's grant of summary judgment to respondent. We affirm.

_____

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**FACTS**

This appeal involves disputes arising out of a construction loan, mortgages that secured the debt, and personal guaranties to pay the debt. Under the terms of a March 2005 construction-loan and promissory note, respondent Sterling State Bank agreed to loan appellant Maas Commercial Properties LLC (MCP) up to $1,875,000, to be repaid with monthly interest-only payments the first year; monthly principal-and-interest payments the following four years; and a final payment on April 8, 2010. To secure the debt, MCP gave Sterling first and second mortgages on Dakota County real property and agreed to pay all property taxes, and appellants Alan Maas and Lynette Maas (Maases) provided Sterling with their individual guaranties.[1] Maases also gave Sterling first and second mortgages on Scott County real property to secure two promissory notes and agreed that they would be in default on the notes if they breached *any* agreement with Sterling.

During the first year of the 2005 promissory note, MCP began paying Sterling interest only at the rate of 6.75%; from May 2005 through March 2006, MCP paid interest only at the rate of 7%. From April 2006 through February 2010, MCP made monthly principal-and-interest payments of $13,377.11. In March 2008, Sterling adjusted the interest rate downward to 6.25%; in April 2008, to 6%; in October 2008, to 5.5% and then to 5%; and in December 2008, to 4.25%. MCP failed to pay property taxes on the Dakota County property during 2009 and failed to make the final loan payment due on April 8, 2010. Sterling declared MCP in default, informed Maas parties that the unpaid

---

[1] We refer to MCP and Maases, collectively, as Maas parties.

2

loan balance exceeded $1,600,000, and demanded immediate payment from Maases under their guaranties. Sterling also notified Maases that they were in default on their individual promissory notes for failing to pay property taxes in 2009 and breaching "Other Agreements," demanded immediate payment under the promissory notes, and then foreclosed its first mortgage against the Scott County property and purchased the sheriff's certificate in December 2010.

Sterling commenced an action to foreclose its mortgage against the Dakota County property and sought a determination that its mortgagee's interest was prior to any interest of Maas parties and enforcement of Maases' guaranties. Maas parties answered and counterclaimed, alleging, among other things, that Sterling breached the 2005 promissory note by failing to adjust the amounts due each month and asserting that Sterling's breach "suspended" their obligations to perform under any agreement with Sterling. The parties brought cross motions for partial summary judgment. The district court denied summary judgment to Maas parties, granted partial summary judgment to Sterling, and ordered entry of judgment. The district court administrator certified the order as "THE PARTIAL JUDGMENT OF THE COURT." Maas parties appealed, and this court dismissed the appeal, concluding that the partial judgment was not immediately appealable. *Sterling State Bank v. Maas Commercial Props., LLC*, 837 N.W.2d 733, 734 (Minn. App. 2013), *review denied* (Minn. Nov. 12, 2013).

In December 2013, after this court's dismissal, the district court dismissed Sterling's unresolved claims based on the parties' stipulation, and the district court administrator certified the resulting judgment.

3

This appeal follows.

**D E C I S I O N**

*Jurisdiction*

Sterling argues that this court lacks "jurisdiction to review" issues involving the foreclosure judgment because Maas parties did not appeal the judgment within 60 days of its entry. Whether this court has jurisdiction to address an issue is a legal question reviewed de novo. *In re Welfare of J.R., Jr.*, 655 N.W.2d 1, 2 (Minn. 2003). We may review final judgments or final partial judgments properly ordered under Minn. R. Civ. P. 54.02 when appeal was taken from them within 60 days. Minn. R. Civ. App. P. 104.01, subd. 1; *see T.A. Schifsky & Sons, Inc. v. Bahr Constr., LLC*, 773 N.W.2d 783, 787–88 (Minn. 2009) (stating that "[r]ule 104.01 refers only to a Final judgment" and referring to "a final partial judgment pursuant to Minn. R. Civ. P. 54.02"). Maas parties timely appealed from the February 2013 partial judgment, but we dismissed that appeal because the partial judgment was not immediately appealable, noting that Maas parties could obtain review of the partial judgment by timely appealing after a final judgment. Maas parties timely appealed following the December 2013 final judgment. We conclude that Maas parties timely appealed the February 2013 partial judgment and that the partial judgment is within our scope of review. *See* Minn. R. Civ. App. P. 103.04 (permitting appellate court to "review any order involving the merits or affecting the judgment" and "any other matter as the interest of justice may require").[2]

---

[2] Also within the scope of our review is the district court's order denying Maas parties' partial summary-judgment motion. Although orders denying summary judgment are

*Summary Judgment*

In granting summary judgment to Sterling, the district court concluded that the 2005 promissory note did not require Sterling to decrease MPC's monthly payments when the interest rate decreased and that Sterling therefore did not breach the note. Maas parties admit that MPC failed to pay the 2010 final payment required by the promissory note and failed to pay the 2009 Dakota County property's taxes required by the 2005 mortgage. But they argue that the court erred by granting Sterling summary judgment because a genuine issue of material fact exists as to whether Sterling was the first party to breach the promissory note by not decreasing their monthly payments when the interest rate decreased, thereby suspending Maas parties' obligations to perform. Maas parties argue that, had the bank not first breached the promissory note, they would have been able to pay the 2009 property taxes. Maas parties' arguments are not persuasive.

Appellate courts "review a decision to grant or deny summary judgment de novo." *Premier Bank v. Becker Dev., LLC*, 785 N.W.2d 753, 758 (Minn. 2010). In doing so, we "determine whether any genuine issues of material fact exist and whether the district court erred in its application of the law," "constru[ing] the facts in the light most

---

generally "not immediately appealable," *Kastner v. Star Trails Ass'n*, 646 N.W.2d 235, 238 (Minn. 2002), they are within the scope of our review of an appealable final judgment when they "involv[e] the merits" of the judgment, Minn. R. Civ. App. P. 103.04. *But cf. Bahr v. Boise Cascade Corp.*, 766 N.W.2d 910, 918 (Minn. 2009) (stating that, after a jury trial, "a denial of a motion for summary judgment . . . cannot be viewed as 'affecting the judgment'" when the denial turns on the existence of a genuine dispute of fact because "a genuine dispute of fact becomes moot once the jury reaches a verdict on that issue"). The order denying Maas parties' motion is within our scope of review because their motion asked for dismissal of the bank's same claims for which the bank received summary judgment and therefore involved the judgment's merits.

favorable to the party against whom summary judgment was granted." *Minn. Laborers Health & Welfare Fund v. Granite Re, Inc.*, 844 N.W.2d 509, 513 (Minn. 2014). "No genuine issue for trial exists when the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *McKee v. Laurion*, 825 N.W.2d 725, 729 (Minn. 2013). Whether a contract is ambiguous is a legal question. *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 832 (Minn. 2012).

Maas parties ask us to conclude that they were relieved of their obligations to perform under the promissory notes, mortgages, and guaranties because Sterling breached the 2005 promissory note. "Generally, contract performance is excused when it is hindered or rendered impossible by the other party," *Zobel & Dahl Constr. v. Crotty*, 356 N.W.2d 42, 45 (Minn. 1984), such as by a "previous 'uncured material failure' by the other party," *Schwickert, Inc. v. Winnebago Seniors, Ltd.*, 680 N.W.2d 79, 84 (Minn. 2004) (quoting Restatement (Second) of Contracts § 237 (1981)), or "a repudiating party['s] . . . prior total breach," *Space Ctr., Inc. v. 451 Corp.*, 298 N.W.2d 443, 451 (Minn. 1980); *accord Associated Cinemas of Am. v. World Amusement Co.*, 201 Minn. 94, 99, 276 N.W. 7, 10 (1937). We have stated that "a party who first breaches a contract is usually precluded from successfully claiming against the other party." *Carlson Real Estate Co. v. Soltan*, 549 N.W.2d 376, 379 (Minn. App. 1996), *review denied* (Minn. Aug. 20, 1996). But "the better expression of that rule is that a breach must be *material* in order to excuse performance." *TC/Am. Monorail, Inc. v. Custom Conveyor Corp.*, 822 N.W.2d 812, 817 (Minn. App. 2012) (emphasis added), *rev'd on other grounds*, 840 N.W.2d 414 (Minn. 2013).

6

To consider whether Sterling breached the 2005 promissory note, as alleged by Maas parties, we construe the various instruments as one contract. *See Marso v. Mankato Clinic, Ltd.*, 278 Minn. 104, 114, 153 N.W.2d 281, 289 (1967) ("Where several instruments are made part of one transaction, they will be read together and each will be construed with reference to the others, although the instruments do not in terms refer to each other."); *Wm. Lindeke Land Co. v. Kalman*, 190 Minn. 601, 607, 252 N.W. 650, 653 (1934) ("[I]t is evident that exhibit B, which consists of the lease proper and the guaranty, is one contract and not two."). The 2005 promissory note and mortgage incorporate each other by reference, as do the note and guaranties. Although the mortgage does not incorporate the guaranties by reference, we construe them as one contract because the guaranties state that "[t]he Lender has refused to make the Loan unless this Guaranty is executed by the Guarantor and delivered to the Lender."

Appellate courts give effect to contract language that is "clear and unambiguous, meaning it has only one reasonable interpretation." *Halla Nursery, Inc. v. City of Chanhassen*, 781 N.W.2d 880, 884 (Minn. 2010). "The determination of whether a contract is unambiguous depends on the meaning assigned to the words and phrases in accordance with the apparent purpose of the contract as a whole." *Id.* We "assign unambiguous contract language its plain meaning," *Savela v. City of Duluth*, 806 N.W.2d 793, 796–97 (Minn. 2011), which we may ascertain by consulting dictionaries, *see, e.g.*, *In re Pamela Andreas Stisser Grantor Trust*, 818 N.W.2d 495, 502 (Minn. 2012) (consulting dictionary to ascertain ordinary meaning of phrase in trust agreement).

The parties do not dispute that an interest rate is needed to calculate monthly payments through amortization.[3] *Cf.* Thomas E. Plank, *The True Sale of Loans and the Role of Recourse*, 14 Geo. Mason L. Rev. 287, 299 n.35 (1991) (stating that an amortization calculation can calculate the periodic-payment amount if "the interest rate, the number of payment periods, [and] the present value [of the debt] . . . is known or assumed"). Maas parties argue that, because the interest rate under the 2005 promissory note varied and the note does not expressly require fixed monthly payments, at least one reasonable interpretation of the following provision is that the note required the bank to decrease monthly payments when the interest rate decreased: "Monthly payments of principal and interest shall be calculated on an assumed amortization of twenty-five (25) years effective March 8, 2006." We disagree.

The subject provision falls within the following relevant context:

> **MAAS COMMERCIAL PROPERTIES, LLC** . . . hereby agrees and promises to pay to the order of **STERLING STATE BANK** . . . the principal sum of up to . . . $1,875,000.00 . . . and to pay interest on the unpaid principal balance, from [March 8, 2005] until this Note is fully paid, at the rate of interest described below. . . .
>
> The interest rate . . . shall be a variable rate equal to one percent (1%) plus the prime rate . . . and shall be adjusted immediately as the Prime Rate changes from time to time during the term of this Note . . . .
>
> Commencing April 8, 2005, monthly payments of interest only shall be made on the eighth day of each month and continue through and include March 8, 2006.

---

[3]"[A]mortization" is "[t]he act or result of gradually extinguishing a debt, such as a mortgage, usu. by contributing payments of principal each time a periodic interest payment is due." *Black's Law Dictionary* 99 (9th ed. 2009).

> Commencing April 8, 2006, monthly payments of principal and interest shall be due on the eighth day of each month through and including March 8, 2010. *Monthly payments of principal and interest shall be calculated on an assumed amortization of twenty-five (25) years effective March 8, 2006.*
>
> Notwithstanding anything contained herein to the contrary, on April 8, 2010, the entire outstanding principal balance, together with accrued interest and any other amounts due hereunder, shall be due and payable in full.

(Emphasis added.) We conclude that nothing in the note required Sterling to adjust monthly payments when the interest rate changed. Rather, the note provided that monthly payments "shall be calculated on an *assumed* amortization of twenty-five (25) years effective March 8, 2006." (Emphasis added.) Absent specific language in the note that required the adjustment of monthly payments, the only reasonable interpretation of the note is that, effective March 8, 2006, fixed monthly payments would be allocated in varying amounts to principal and interest, depending on the applicable interest rate.

Maas parties argue that the district court erred by effectively granting summary judgment sua sponte when it interpreted "assumed amortization" to mean that monthly payments would be fixed without either party suggesting that interpretation. *See Hebrink v. Farm Bureau Life Ins. Co.*, 664 N.W.2d 414, 416 (Minn. App. 2003) ("A party opposing a district court's sua sponte order for summary judgment must be given a 'meaningful opportunity' to acquire evidence to oppose the motion."). Maas parties are correct that the district court concluded that their interpretation of the subject provision "would be contradictory to the parties' use of the word 'assumed' to modify

'amortization,'" but they cite no authority for the proposition that granting summary judgment based in part on a contract interpretation not suggested by the parties is the equivalent of granting summary judgment sua sponte. And Maas parties do not argue that they lacked a meaningful opportunity to oppose that interpretation on appeal. We agree with the district court. The use of "assumed" in the promissory note acknowledged that, although the payment period would be 4 years, monthly payments would be calculated as if the period were 25 years. *Cf. The American Heritage Dictionary* 110 (4th ed. 2006) (defining "assumed" as "[t]aken up or used so as to deceive; pretended" and "supposed").

Without providing persuasive authority, Maas parties argue that interpreting the promissory note as providing for fixed monthly payments ignores "[t]he general rule with adjustable rate financing . . . that when the interest rate adjusts, the payment amount also adjusts." Although we are not persuaded, even if such a general rule exists, it is not contained in the note and therefore is immaterial to whether the relevant language in the note is ambiguous. *Cf. Sayer v. Minn. Dep't of Transp.*, 790 N.W.2d 151, 157 (Minn. 2010) ("A contract is ambiguous if, *based upon its language alone*, it is reasonably susceptible of more than one interpretation." (emphasis added) (quotation omitted)); Grant S. Nelson & Dale A. Whitman, *Real Estate Finance Law* § 11.4, 963 (5th ed. 2007) (noting that two options when adjustable-rate-mortgage interest rates rise are (1) raising monthly payments *and* (2) holding payments constant and adding unpaid interest to principal).

Read in context, we conclude that the subject provision unambiguously required Sterling to calculate monthly payments only once, effective March 8, 2006, based on a

10

25-year assumed amortization. We also conclude that the district court did not err by rejecting Maas parties' argument that Sterling first breached the 2005 promissory note thereby suspending Maas parties' obligations to perform under the various instruments at issue. The district court did not err by granting Sterling summary judgment and denying Maas parties summary judgment.

**Affirmed.**